## George Weidemann Brewing Company v. Parmlee, et al.

(Decided December 10, 1915.)

### Appeal from Campbell Circuit Court.

Negligence—Contributory Negligence of Pedestrian in Attempting to Cross Street.—In an action by a pedestrian who is crossing a street in a city at a place other than the regular crossing and comes in contact with a horse, and the evidence shows that she ran into the horse while attempting to evade another wagon, there was such contributory negligence as will preclude a recovery by her.

RAMSEY WASHINGTON for appellant.

BARBOUR & BASSMAN for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

This is an action for damages brought by appellee against appellant wherein it is alleged that appellant's agent and servant, while driving and operating a horse and wagon belonging to appellant upon a public thoroughfare in the city of Newport, negligently and carelessly drove said horse and wagon against, upon and over plaintiff, throwing her to the ground and causing the wheel of the wagon to pass over one of her legs and by reason of which her said leg was broken and she was otherwise injured.

The answer traverses the material allegations of the petition in one paragraph and in another pleads contributory negligence.

On the trial the plaintiff recovered a verdict and judgment for $1,750.00, and on the appeal the only reason urged for reversal is that appellant on the trial was entitled to a peremptory instruction.

The plaintiff, an aged woman, was a passenger on a street car going north on Monmouth street, in Newport; at the intersection of Ninth street the car stopped at the "near" corner and the plaintiff alighted from the rear end thereof about thirty feet from the corner of Ninth and Monmouth, and on the east side of the eastern car track, therebeing two street car tracks parallel with each other on Monmouth street. A short distance behind the car from which she alighted there was in the eastern car track and going in the same direction as the car, a wagon;

which also stopped when the car did, but some ten or fifteen feet behind it. Appellee, as the car proceeded north, crossed the eastern car track in front of the wagon, which had stopped, and was proceeding directly across the street to a store at the southwest corner of Ninth and Monmouth streets, but when she reached the eastern rail of the western car track, she came in contact with the horse driven by appellant's driver, which was going south, the wagon being on the western car tracks; she came in contact with the horse at about where the saddle or girth is; she was thrown down and before the wagon could be stopped, the front wheel ran over one of her legs and broke it. Going south on Monmouth street at this point is up-grade and the wagon was being driven in a slow or jog-trot.

The plaintiff's own testimony is, that after alighting from the car she started across the street to go to Brandt's store on the southwest corner of Ninth and Monmouth, and that to avoid the crowd she thought she would go right straight across the street instead of going down to the corner, and the first thing she knew the wagon ran into her; she could not state at what point in the street it was that the wagon came in contact with her, and does not claim to have seen the horse or wagon until the collision occurred, and that she was a little hard of hearing.

E. M. Clary testifies for the plaintiff that he was standing at the northwest corner of Ninth and Monmouth and saw appellant's wagon pass going up Monmouth street, and that a little later he saw appellee fall; that he was standing from about 90 to 100 feet from the place of the accident; that it appeared to him the wagon or the shaft struck appellee about in the center of the shaft; that the wagon was stopped in about five feet after the collision.

D. W. Ort, another witness for the plaintiff, states that he boarded the car at Ninth and Monmouth from which appellee had alighted and was standing on the rear end of the car as it proceeded, and noticed that the woman, as he thought, had been struck by the wagon; that the horse was jogging along; that when the contact took place between the woman and the horse or wagon, that the car was north of Ninth street. That is all the evidence introduced by the plaintiff to show the manner in which the accident happened.

Joseph Davis, a witness for appellant, states that he was at the northeast corner of Ninth and Monmouth and saw appellee when she started across the street; that there was a team right behind the car, near to the curb, and that she seemed confused and uncertain which way to go on account of that team; that she hesitated, and a wagon came up the street along side of the car on the opposite track, and as it did she started right out and ran against the horse's body midway (right about midway of the shaft), and that she seemed to be in a hurry.

John Gugel, the driver of the wagon, states that as he crossed Ninth street going down Monmouth, there was a car going north, and he going up grade passed the car, and the first thing he noticed was appellee run up against his horse; that she fell backwards and before he could stop his horse the front wheel ran over one of her legs, but the rear wheel did not; that he had perfect control of his horse, which was old and gentle.

George Rorell was standing at the southwest corner of Ninth and Monmouth and states that the horse and wagon was going at a dog-trot; that he saw appellee going across the street; that there was a wagon back of the car a few feet; that she walked in between the car and the wagon and right direct between the car and this horse; she looked as if she was scared and wanted to rush across, and rushed right into the horse; that the driver, when he saw what was about to occur, put on his brake and almost threw his horse down in trying to avoid the accident; that he saw no way in which it could have been avoided.

Frank Bregel says he was standing at the southwest corner of Ninth and Monmouth, and that he saw appellee start across the street, and an express wagon came down the track behind the car and it looked like she wanted to get across there before the wagon came down, and ran right into the horse; that she looked like she was in a little run and that she wanted to get across before the wagon came down.

The plaintiff herself does not claim to have seen the horse or wagon until the collision took place, and she does not deny the testimony of defendant's witnesses that at the time of the injury she was attempting to avoid the express wagon which stopped behind the street car. The evidence is conclusive that she came in contact with the horse at about the saddle or girth and from

this it is perfectly apparent that the horse did not run over her but that she ran into the horse. It is clear from the evidence that at the time of the collision she was watching the express wagon and in attempting to evade that failed to look in front of her. She was attempting to cross the street at a place other than the regular crossing, and while she had a right to cross at that point, having elected to do so rather than go to the regular crossing, she will be required to exercise a higher degree of care for her own safety than if she was crossing at a regular crossing.

The evidence shows that Ninth and Monmouth is one of the busiest points in the city of Newport, and that the accident happened about noon, which is one of the busiest hours of the day. The evidence not only fails to show any negligence upon the part of the driver, but affirmatively shows that the accident was the direct result of appellee's own negligence, and a verdict for appellant should have been directed as asked.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.